UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
FRONTLINE PROCESSING CORP.,

                                Plaintiff,                          13 Civ. 3956

                - against -                        **OPINION & ORDER**

MERRICK BANK CORP.,

                             Defendant.
--------------------------------------------------------------------X
**ROBERT P. PATTERSON, JR., U.S.D.J.**

        On February 13, 2013, Plaintiff Frontline Processing Corporation ("Frontline" or the

"Plaintiff") filed a Complaint and Jury Demand ("Complaint") against Defendant Merrick Bank

Corporation ("Merrick" or the "Defendant") for compensatory damages and punitive damages

based on claims for: (1) twelve breaches of contract; (2) breach of the implied covenant of good

faith and fair dealing; (3) conversion; (4) fraud/fraudulent inducement; (5) constructive fraud; (6)

negligent misrepresentation; and (7) deceit.  (Compl., ECF No. 5.)

        On July 25, 2013, the Defendant moved under Federal Rule of Civil Procedure 12(b)(6)

to dismiss the Complaint with prejudice.  (Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 27.)

On August 22, 2013, the Plaintiff opposed the motion to dismiss and asked, in the alternative, for

leave to amend the pleadings.  (Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 36.)

The Defendant replied on September 11, 2013.  (Def.'s Reply Mem. of Law in Further Supp. of

Mot. to Dismiss ("Def.'s Reply"), ECF No. 37.)  Oral argument was held on this motion on

October 24, 2013.  (Tr. of Oct. 24, 2013 Hearing ("Tr. 10/24/13").)

        For the foregoing reasons, Merrick's motion to dismiss the breach of contract claim

alleged in paragraph 7(f) is DENIED.  Merrick's motion to dismiss the breach of contract claims

alleged in paragraphs 7(a)-(e), (g)-(l), and paragraph eight is GRANTED.  Frontline's request for

leave to amend the breach of contract claims alleged in paragraphs 7(a)-(e), (g)-(l), and paragraph eight is GRANTED.

Merrick's motion to dismiss the breach of the implied covenant of good faith and fair dealing claim, the conversion claim, the fraud/fraudulent inducement claim, the constructive fraud claim, the negligent misrepresentation claim, and the deceit claim is GRANTED.  Leave to amend the Montana law constructive fraud claim and the Montana law negligent misrepresentation claim is GRANTED.  Leave to amend the breach of the implied covenant of good faith and fair dealing claim, the conversion claim, the fraud/fraudulent inducement claim, and the deceit claim is DENIED.

## I.   BACKGROUND

On August 3, 2012, Frontline, a Nevada corporation with a principal place of business in Montana, entered into a Merchant Independent Sales Organization Agreement ("Agreement") with Merrick, a Utah-based industrial loan bank, for the purpose of establishing a business relationship related to selling Merrick's services for credit card processing.  (See Compl., Ex. A ("Agreement") 1, ECF No. 5.)  Merrick is a member bank of the Visa, MasterCard, and Discover credit and debit card networks (the "Card Brands"), and its role is to clear and settle merchants' credit and debit card transactions authorized by the Card Brands.  (Id.)  Frontline is an Independent Sales Organization ("ISO"), which contracted to market Merrick's services to merchant businesses who want to engage in credit and debit card transactions.  (Id.)  As part of the Agreement, Frontline agreed to recruit merchants and provide support services to those merchants in exchange for a portion of the transaction fees associated with its merchants' credit and debit card transactions.  (Def.'s Mot. at 6.)  Frontline asserts that Merrick breached the Agreement.  In its Complaint, Frontline seeks compensatory damages and punitive damages

2

based on twelve purported breaches of the Agreement as well as claims for an alleged breach of the covenant of good faith and fair dealing, conversion, fraud/fraudulent inducement, constructive fraud, negligent misrepresentation, and deceit.  (Compl.¶¶ 2-59.)

On February 13, 2013, Frontline filed the Complaint in Montana state court.  (Id. ¶¶ 1-2.) Merrick removed the case to the United States District Court for the District of Montana pursuant to 28 U.S.C. § 1441.  (Notice of Removal, ECF No. 1.)  The United States District Court has jurisdiction under 28 U.S.C. § 1332 because this is a civil action between citizens of different states in which the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.  The case was transferred to the Southern District of New York after the Montana District Court granted Defendant's motion to transfer venue under 28 U.S.C. § 1404(a), finding that the Agreement contains an enforceable forum selection clause.  (Order, May 29, 2013, ECF No. 19.)  Currently pending before this Court is the Defendant's motion to dismiss the Complaint.

## II.    MOTION TO DISMISS THE BREACH OF CONTRACT CLAIMS

### A.  Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.

To survive a motion to dismiss for a breach of contract claim under New York law, the complaint must allege facts which show: "(1) the existence of an agreement, (2) adequate performance of the contract by plaintiff, (3) breach of the contract by defendant, and (4) damages." Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004). Conclusory allegations that a defendant breached an agreement are insufficient to support a breach of contract claim. See Berman v. Sugo LLC, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) (Patterson, J.) (collecting cases). In adjudicating a motion to dismiss, the court may properly consider any documents attached as exhibits to the pleadings, or incorporated by reference therein. See Fed. R. Civ. P. 10(c); Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002); Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69 (2d Cir. 1995) (per curiam). In this case, therefore, it is proper to consider the parties' Agreement, which was attached to the Complaint.

### B. Discussion

The Complaint lists twelve purported breaches of the Agreement by Merrick, (Compl. ¶¶ 7(a)-(l)), and makes a request for damages in the amount of $100,000.00 together with prejudgment interest, costs, and "such additional damages incurred as a result of the breaches of contract." (See Pl.'s Opp'n at 7 (citing Compl. ¶ 8).) For the reasons discussed below, only the breach of contract alleged in paragraph 7(f) survives the motion to dismiss. (Id. ¶ 7(f).) The remainder of the breach of contract claims, found in paragraphs 7(a) through 7(e) and paragraphs 7(g) through 7(l), are dismissed and leave to amend is granted. (Id. ¶¶ 7(a)-(e), (g)-(l).) The request for damages, found in paragraph eight of the Complaint, is dismissed and leave to amend that paragraph is granted as indicated below. (Id. ¶8.)

***1. Paragraph 7(f) Alleges Sufficient Facts to Survive the Motion to***

   ***Dismiss***

In paragraph 7(f) of its Complaint, Frontline alleges that Merrick breached the Agreement by "breaching its express warranty that no claim…was pending against Merrick or that any such claim…would [not] have a material adverse effect on Merrick's ability to perform its obligations under the contract."  (Id. ¶ 7(f).)  Specifically, Frontline asserts that Merrick breached the Agreement by failing to disclose a $27,000,000.00 claim filed against its credit card program by another Merrick customer, JetPay.  (Id. ¶ 20(d).)  The Complaint alleges that this action constitutes a breach of section six of the Agreement.  (Id. ¶ 6(h).)  In that section of the Agreement, Merrick warranties that "there is no claim, or any litigation, proceeding…against or affecting either party that will have a material adverse effect on the ability to perform its obligations under this Agreement."  (Agreement § 6.3(d).)  Frontline states that Merrick breached this provision when it failed to disclose the JetPay claim pending against its credit card program.

Though the Complaint does not specifically allege facts which show that JetPay's claim would have had a material adverse effect on Merrick's ability to perform its obligations under the Agreement, one could nonetheless reasonably infer from the size of the alleged JetPay claim that it could have an effect on Merrick's abilities to meet its obligations as they came due, and thus could have a material adverse effect on Merrick's ability to perform under the Agreement.  (Agreement § 6.3(d).)  Because paragraph 7(f) "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," this paragraph is sufficiently pled to survive the motion to dismiss.  Iqbal, 556 U.S. at 678 (internal citation omitted).  Therefore, the motion to dismiss paragraph 7(f) is DENIED.

### *2. Paragraphs 7(a)-(e) and (g)-(l) Do Not Allege Sufficient Facts to Survive the Motion to Dismiss*

The remainder of Frontline's breach of contract claims, (Compl. ¶¶ 7(a)-(e), (g)-(l)), are unsupported by sufficient facts "to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678 (internal citation omitted).  Specifically, these claims fail because they fail to plead facts to show that Merrick breached the Agreement.  Most of these claims, (Compl. ¶¶ 7(a)-(b), (d)-(e), (g)-(j), (l)), do not plead any facts at all specifying how Merrick allegedly breached the Agreement.  Instead of pleading facts, Frontline's allegations amount to inserting the word "failed" in front of contract provisions.  (Compare id. ¶ 7(a) ("Failing to maintain all Merchant Reserve Accounts subject to any rights granted to the merchant or to the ISO under the applicable Merchant Agreement.") with Agreement § 3.1 (agreeing "to maintain all Merchant Reserve Accounts subject to any rights granted to the merchant or to the ISO under the applicable Merchant Agreement.").)  None of the claims specify how the Defendant allegedly failed to perform on its contractual obligations.  Cf. Arma v. Buyseasons, Inc., 591 F. Supp. 2d 637, 643 (S.D.N.Y. 2008) ("The bare allegations that Defendants 'failed to make timely payments' and 'failed to properly account' to Plaintiffs…are, without more, conclusory.  They are unsupported by any specific facts indicating what particular payments were late, when they were due and made, how such late payments give rise to a claim…, or how such a claim translates into damages.").  Conclusory allegations "unsupported by factual assertions fail[] even the liberal standard of Rule 12(b)(6)."  Id. at 637 (quoting De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996)).  Therefore, the claims in paragraphs 7(a)-(b), (d)-(e), (g)-(j), and (l) are dismissed.

6

Paragraphs 7(c) and 7(k) provide some facts to support Frontline's claims for breaches of contract, but the facts those paragraphs allege are insufficient to survive a motion to dismiss. In paragraph 7(c), Frontline alleges that Merrick "fail[ed] to accept merchant applicants presented by Frontline in accordance with Merrick's ISO policy and/or fail[ed] to notify Frontline of the reasons why each rejected merchant applicant failed to satisfy the requirements for acceptance pursuant to Merrick's ISO credit policy." (Compl. ¶ 7(c).) Frontline provides the names of three merchants who were "improperly rejected" by Merrick—Best Western Bighorn, Billings Ventures, LP, and Smart Travel & Incentives, Inc.—and alleges that this rejection constituted a breach of the Agreement. (Id.; Agreement § 5.1(d).) However, paragraph 7(c) does not specify how Merrick's "improper rejection" of the three merchants could constitute a breach of the parties' Agreement. The Agreement provides that Merrick has "the right but not the obligation, *in its sole discretion* to…accept in accordance with its ISO credit policy, any applicant…provided, however, that if Merrick does not accept any such applicant, Merrick shall notify ISO of the reasons why." (Agreement § 5.1(d) (emphasis added).) Because the Agreement grants Merrick "sole discretion" to accept or reject merchant applicants, the facts that paragraph 7(c) alleges are not sufficient to show that Merrick's rejection of merchant applications was a breach of the Agreement. Furthermore, the Complaint does not plead facts that show that Merrick, in rejecting the merchant applicants, did not follow its ISO credit policy. Therefore, paragraph 7(c) fails to raise Frontline's right to relief above the speculative level, and is dismissed. See Arma at 643; Twombly, 550 U.S. at 555.

In paragraph 7(k), Frontline alleges that Merrick breached the Agreement by "failing to promptly notify Frontline of any legal or regulatory proceeding or any threat of a legal or regulatory proceeding of which Merrick had become aware *with respect to matters which were*

*the subject of the Contract*."  (Compl. ¶ 7(k) (emphasis added).)  Specifically, Frontline alleges

that Merrick breached section 13.3 of the Agreement, which provides that each party will

promptly notify the other party of any legal or regulatory proceeding or threat of a legal or

regulatory proceeding of which it becomes aware "with respect to any matters that are the

subject of this Agreement."  (Agreement § 13.3.)  However, though Frontline states that a claim

was filed by JetPay against Merrick's credit card program, the Complaint does not allege facts

showing that JetPay's claim affected the matters that were the subject of the Agreement between

Merrick and Frontline.  Accordingly, paragraph 7(k) fails to raise Frontline's right to relief above

the speculative level, and is dismissed.  <u>See</u> <u>Arma</u> at 643; <u>Twombly</u>, 550 U.S. at 555.

    In sum, the motion to dismiss paragraphs 7(a)-(e), and (g)-(l) is GRANTED.  Rule

15(a)(2) provides for leave to amend and states "[t]he court should freely give leave when justice

so requires."  Fed. R. Civ. P. 15(a)(2).  The Complaint is Frontline's initial pleading and,

therefore, Frontline's request for leave to amend paragraphs 7(a)-(e), (g)-(l) is GRANTED.[1]

### 3. Frontline's Damage Request in Paragraph Eight is Dismissed Because Consequential or Special Damages are Barred by the Agreement

    Finally, in paragraph eight, Frontline alleges that it was damaged by Merrick's breaches

of contract in the amount of $100,000.00 for the wrongful withholding of the funds contained in

the reserve account, together with prejudgment interest, costs, and such additional damages that

Frontline has incurred.  (<u>Id.</u> ¶ 8.)  Included in these damages are damages stemming from the loss

---

[1] Though not specifically raised by the parties, the Court notes that it was unable to locate in Frontline's Complaint any pleading stating that Frontline had adequately performed under the Agreement.  Because to survive a motion to dismiss for a breach of contract claim under New York law, the complaint must allege facts which show adequate performance of the contract by plaintiff, <u>Eternity Global Master Fund Ltd.</u>, 375 F.3d at 177, the amended Complaint should allege facts showing Frontline's adequate performance of the Agreement.

of business with lost merchants such as Farmers Union Oil Co., Glass Works, Inc., Lake Pit Stop, LLC, and Montana Speedy Lube.  (Id.)

Merrick argues that Frontline's purported damages for breach are excluded by the contract.  (Def.'s Mot. at 11.)  Merrick points to section 7.9 of the Agreement, which provides that in "no event will either party, or its respective officers, agents, or affiliates, be liable for special, incidental or consequential damages or claims or demands arising from this Agreement." (Agreement § 7.9.)  This provision, Merrick argues, precludes Frontline from recovering the requested lost profits stemming from the loss of third-party merchants, such as Farmers Union Oil Co., Glass Works, Inc., Lake Pit Stop, LLC, and Montana Speedy Lube, because lost profits from lost merchants would constitute consequential damages.  (Def.'s Mot. at 11.)

Since the interpretation of a contract generally is a question of law to be determined by the court, United States v. Liranzo, 944 F.2d 73, 77 (2d Cir. 1991), the court may dismiss a complaint based on a contract if the contract unambiguously shows that the plaintiff is not entitled to the requested relief.  DynCorp v. GTE Corp., 215 F. Supp. 2d 308, 315 (S.D.N.Y. 2002) (citing Marketing/Trademark Consultants, Inc. v. Caterpillar, Inc., No. 98 Civ. 2570 (AGS), 2000 WL 648162, at *3 (S.D.N.Y. May 19, 2000)).  In this case, the Agreement unambiguously precludes either party from being held liable for consequential damages. Furthermore, "lost earnings are, of course, a component of lost profits…and lost profits from a business venture are a prime example of consequential or special damages."  Int'l Gateway Exch., LLC v. Western Union Fin. Servs., 333 F. Supp. 2d 131, 149 (S.D.N.Y. 2004). Frontline's lost profits from lost third-party merchants (such as Farmers Union Oil Co., Glass Works, Inc., Lake Pit Stop, LLC, and Montana Speedy Lube) are therefore a "prime example" of a consequential or special damage for which it has no remedy under the Agreement.

9

Because damages in the form of lost profits from lost third-party merchants are barred by the Agreement, the motion to dismiss paragraph eight is GRANTED, and Frontline's request for leave to amend is GRANTED. The amended damages provision should not include a request for consequential or special damages excluded by the parties' Agreement.

III.    **MOTION TO DISMISS THE CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

Frontline asserts that Merrick rejected multiple merchant applications presented by Frontline in violation of the implied covenant of good faith and fair dealing. (Compl. ¶¶ 9-12.) Under New York law,[2] all contracts contain an implied covenant of good faith and fair dealing. Bear, Stearns Funding, Inc. v. Interface Grp.-Nevada, Inc., 361 F. Supp. 2d 283, 298 (S.D.N.Y. 2005) (stating "all contracts contain an implied agreement that neither party may engage in conduct which would interfere with the other party's right to realize the benefit of the bargain, even if such conduct is not specifically prohibited by the contract") (internal citations omitted). Because good faith is an implied term, "breach of that duty is merely a breach of the underlying contract." Fasolino Foods Co. v. Banca Nazionale del Lavoro, 961 F.2d 1052, 1056 (2d Cir. 1992). Thus, when a plaintiff alleges both breach of contract and breach of the implied covenant of good faith and fair dealing, courts routinely dismiss the latter as duplicative. See JPMorgan Chase Bank, N.A. v. IDW Grp., LLC, No. 08 Civ. 9116 (PGG), 2009 WL 321222, at *6 (S.D.N.Y. Feb. 9, 2009) (collecting cases).

To establish whether the breach of the implied covenant of good faith and fair dealing is duplicative of the breach of contract claim, the court must evaluate whether they rely upon the same factual allegations. See Bear, Sterns Funding, Inc., 361 F. Supp. 2d at 298 (finding breach

---

[2] The parties are in agreement that there is no substantive conflict between the laws of New York and Montana with respect to the claim for breach of the implied covenant of good faith and fair dealing and that New York law shall apply. (Def.'s Mot. at 12; Pl.'s Opp'n at 8.)

of the covenant of good faith not duplicative because the underlying facts were wholly separate from the breach of contract claim and did not relate to breach of an express provision).

Here, the breach of the implied covenant of good faith and fair dealing claim realleges and incorporates the allegations set forth in its breach of contract claims.  (Compl. ¶ 9.) Frontline then alleges, just as in paragraph 7(c) of the breach of contract section, that "Merrick rejected multiple merchant applications presented by Frontline in bad faith and without commercial justification, to the detriment of Frontline."  (Id. ¶ 11.)  The merchant applicants that Frontline alleges were "improperly rejected" by Merrick are Billings Ventures, LP and Smart Travel & Incentives, Inc.—two of the merchants whose improper rejection constituted the basis for the breach of contract claim.  (Compare id. ¶ 11 with id. ¶ 7(c).)  It is clear that the same factual allegations underlying the breach of contract claim also underlie the breach of the implied covenant of good faith and fair dealing claims.  The latter claims are therefore duplicative and must be dismissed.

Merrick's motion to dismiss paragraphs nine through twelve of the complaint for failure to state a claim is GRANTED.  Leave to amend these paragraphs is DENIED.

## IV.    MOTION TO DISMISS THE CONVERSION CLAIM

In paragraphs thirteen through seventeen, Frontline alleges that Merrick wrongfully converted Frontline's Reserve Account, and caused damage to Frontline in the amount of $100,000.00.  (Id. ¶¶ 13-17.)  To state a conversion claim under New York law,[3] a complaint must show "legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question ... to the exclusion of the plaintiff's rights."  Berman, 580 F. Supp. 2d at 206

---

[3] The parties are in agreement that there is no substantive conflict between the laws of New York and Montana with respect to the conversion claim and that New York law shall apply.  (Pl.'s Opp'n at 17; Def.'s Reply at 10.)

(citing <u>Fiorenti v. Central Emergency Physicians, PLLC</u>, 762 N.Y.S.2d 402 (App. Div. 2003).)
For a claim of conversion to survive a motion to dismiss, it is not enough merely to incorporate
the factual allegations relating to breach of contract.  <u>See</u> <u>id.</u>, 580 F. Supp. 2d at 206; <u>see also</u>
<u>Richbell Information Services v. Jupiter Partners</u>, 765 N.Y.S.2d 575, 590 (App. Div. 2003)
(upholding dismissal of conversion claim that "satisf[ies] the technical elements of that tort"
because it was duplicative of the contract claims).  The conversion claim does not survive the
motion to dismiss both because it fails to allege facts to show that Merrick exercised
unauthorized dominion over the ISO Reserve Account and because it is duplicative of the breach
of contract claim.

　　　Turning first to the Agreement, section 7.7 specifies how the ISO Reserve Account must
be maintained.  That section requires Frontline to establish a reserve account to protect Merrick
against any losses.  (<u>See</u> Agreement § 7.7.)  Under the Agreement, Merrick is the "sole and
exclusive owner of the ISO Reserve Account for the benefit of ISO," (<u>id.</u> § 7.7(c)), and Merrick
is permitted to withdraw from the ISO Reserve Account "from time to time amounts equal to any
losses suffered or incurred by Merrick" in connection with any merchant related expenses, any
amounts owed by Frontline to Merrick, and any assessments by the Card Brands on Frontline.
(<u>Id.</u> § 7.7(d).)  Upon termination of the Agreement, Merrick may retain the ISO Reserve Account
and continue to withdraw from the ISO Reserve Account for nine months following the latter of
the date of termination, the date of the processing of the last transaction, or the "final date of any
trailing activity."  (<u>Id.</u> § 7.7(g).)

　　　Frontline's conversion claim fails to state a claim for conversion because it fails to allege
facts that show that Merrick exercised unauthorized dominion over the Reserve Account.
Frontline alleges that "[u]nder the contract, Merrick was to hold the Reserve Account for the

benefit of Frontline" and that "upon Frontline's notice of termination of the Contract, Merrick refused to refund the amounts contained in Frontline's Reserve Account." (Id. ¶¶ 14-15.) Frontline claims that this refusal to refund the Reserve Account "amount[ed] to a conversion of the Reserve Account funds," and allegedly damaged Frontline in the amount of $100,000.00. (Id. ¶¶ 16-17.)  However, because section 7.7(g) of the Agreement provides that Merrick may retain Frontline's Reserve Account for nine months following the latter of the date of termination, the last transaction processing, or any trailing activity, Frontline's allegation that Merrick refused to refund the Reserve Account "upon Frontline's notice of termination of the contract," does not state a claim for conversion under New York law.  To show that Merrick had exercised unauthorized dominion over the Reserve Account, Frontline would need to allege facts to show that Merrick had retained the Reserve Account beyond the time period permitted under the Agreement, which it has failed to do.  Therefore, Frontline's claim for conversion fails to state a claim under New York law.

Furthermore, Frontline's conversion claim is duplicative of its breach of contract claim found in paragraph 7(l).  First, Frontline's conversion claim begins in paragraph thirteen by realleging and incorporating the allegations set forth in the breach of contract section.  (Compl. ¶ 13.)  Paragraphs fourteen through seventeen amount to little more than a reiteration of Frontline's breach of contract claims recast as conversion.  (Id. ¶¶ 14-17.)  In its breach of contract section of the Complaint, in paragraph 7(l), Frontline alleges that Merrick failed to refund the balance of Frontline's Reserve Account upon Frontline's termination of the contract; and in paragraph eight, Frontline alleges that it was damaged in the amount of $100,000.00 for the wrongful withholding of funds in the Reserve Account.  (Id. ¶¶ 7(l), 8.)  These facts, underlying the breach of contract claim, are identical to those underlying the conversion claim.

In sum, paragraphs thirteen through seventeen fail to state a claim for conversion and are duplicative of the breach of contract claim found in paragraph 7(l).  Because the conversion claim fails to state a claim under Rule 12(b)(6) and because the conversion claim "merely…incorporate[s] the factual allegations relating to breach of contract," Berman, 580 F. Supp. 2d at 206, and pleads no independent factual support, the conversion claim does not survive the motion to dismiss.  Therefore, Merrick's motion to dismiss paragraphs thirteen through seventeen for failure to state a claim is GRANTED.  Leave to amend these paragraphs is DENIED.

## V.   MOTION TO DISMISS THE CLAIMS BASED ON MISREPRESENTATION

### A.  Legal Standard

When a claim alleges fraud, Rule 9(b) requires such allegations to be pleaded with particularity.  Fed. R. Civ. P. 9(b).  The Second Circuit has explained that to meet this standard, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (internal citation omitted).  Although Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), plaintiffs must nevertheless "allege facts that give rise to a strong inference of fraudulent intent." Lerner, 459 F.3d at 290.

Because this Court is sitting in diversity, it must decide whether New York or Montana tort law applies.[4]  Applying New York's choice-of-law analysis for tort claims, the Court must

---

[4] The Defendant argues that the contractual choice-of-law provision disposes of the choice-of-law analysis for the fraud claims.  However, "under New York law…tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract." Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc., 414 F.3d 325, 335 (2d Cir. 2005); see also Krock v. Lipsay, 97 F.3d 640, 645

consider whether an actual conflict exists between the state laws that are implicated here.
Finance One, 414 F.3d at 331 (citing Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998)).  If
such a conflict exists, the Court must apply the law of the state with the greatest interest in the
litigation.  White Plains Coat & Apron Co. v. Cintas Corp., 460 F.3d 281, 284 (2d Cir. 2006).

### B.  Discussion

In this case, Plaintiff asserts four separate claims relating to Defendant's alleged
misrepresentations: fraud/fraudulent inducement (see Compl. ¶¶ 18-29); constructive fraud (see
id. ¶¶ 30-40); negligent misrepresentation (see id. ¶¶ 41-52); and deceit (see id. ¶¶ 53-59).  All of
these claims are subject to the heightened pleading standards of Rule 9(b).[5]  Each claim alleges
that Merrick, through its "agents" Brian Smith, Bryan Hayden, and others, misrepresented: (1)
that Merrick had a Merchant Chargeback Insurance Program; (2) that Merrick had a risk
monitoring program in place to protect Frontline; (3) that Merrick was more willing to take on

---

(2d Cir. 1996) ("While a choice-of-law provision is effective as to breach of contract claims, it does not apply to
fraud claims, which sound in tort.").  In Finance One, the Second Circuit indicated that "presumably a contractual
choice of law clause could be drafted broadly enough to reach [incidental] tort claims," but no reported New York
cases presented such broad clauses.  Finance One, 414 F.3d at 335.  The choice-of-law clause here provides that
"this Agreement and all rights and obligations hereunder, including but not limited to matters of construction,
validity and performance, are governed by and construed in accordance with the laws of the State of New York."
(Agreement § 13.7.)  This provision is not substantially different than the one considered in the New York state case
relied upon by the Second Circuit in Finance One, Knieremen v. Balse Halsey Stuart Shields Inc., 427 N.Y.S.2d 10,
12 (App. Div. 1980), overruled on other grounds, Rescildo v. R.H. Macy's, 594 N.Y.S.2d 139 (App. Div. 1993),
which provided that the clause "[t]his contract shall be governed by the laws of New York," was not broad enough
to reach incidental tort claims.  In light of New York courts' reluctance to read choice-of-law clauses broadly, this
clause will similarly not be read to encompass the claims that sound in tort.  See Finance One, 414 F.3d at 335.
Therefore, New York's "interest analysis" for tort law claims applies.  Id. at 336.

[5]  While the "Second Circuit has not yet determined whether Rule 9(b) applies to negligent misrepresentation
claims, district courts in this District have routinely concluded that the Rule is applicable to negligent
misrepresentation claims that are premised on fraudulent conduct."  Dexia SA/NV v. Deutsche Bank AG, 11 Civ.
5672 (JSR), 2013 WL 98063 (S.D.N.Y. Jan. 4, 2013).  Here, since Frontline's negligent misrepresentation claim
references the same set of facts and incorporates by reference the allegations from its fraud causes of action, the
Rule 9(b) standard applies.  See In re Parlamat Secs. Litig., 479 F. Supp. 2d 332, 339 n.30 (S.D.N.Y. 2007) ("The
Bank's claim for negligent misrepresentation realleges and incorporates by reference all prior allegations, including
those alleging fraud, and is therefore subject to Rule 9(b)."); see also Northwestern Mut. Life Ins. Co. v. Banc of
America Securities LLC, 254 F. Supp. 2d 390, 400 (S.D.N.Y. 2003) (applying Second Circuit precedent to
determine that Federal Rule of Civil Procedure 9(b) applied to a negligent misrepresentation claim under Wisconsin
state law).

high risk merchants than its competitors; and (4) that there were no claims against Merrick that would affect the Merrick-Frontline relationship.  (Id. ¶¶ 19-20, 31-32, 42-43, 54-55.)

For the reasons discussed below, the motion to dismiss the misrepresentation claims, (id. ¶¶ 18-59), is GRANTED.  For the reasons discussed below, leave to amend the Montana law constructive fraud claim and the Montana law negligent misrepresentation claim is GRANTED. Leave to amend the fraud/fraudulent inducement claim and the deceit claim is DENIED.

### 1. New York Law Governs the Fraud/Fraudulent Inducement Claim, and this Claim Warrants Dismissal

Both parties agree that there is no conflict between Montana and New York law with respect to fraud/fraudulent inducement claim, and that New York law applies.  (Def.'s Reply at 6.)  Under New York law, "to state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff, and resulting injury."  Lerner, 459 F.3d at 291.  "A claim of fraud may be dismissed on the pleadings because as a matter of law a plaintiff will not be able to establish that reliance on the alleged representation was reasonable."  Junk v. Aon Corp., No. 07 Civ. 4640 (LMM), 2007 WL 4292034, at *5-*6 (S.D.N.Y. Dec. 3, 2007).

Turning first to the application of the heightened pleading standard of Rule 9(b), the allegations of fraud/fraudulent inducement found in paragraphs eighteen through twenty-nine, do not satisfy all of Lerner's four requirements.  They do satisfy Lerner's requirement to identify the allegedly fraudulent statements made; specifically, paragraphs nineteen and twenty allege that misrepresentations were made regarding chargeback insurance programs, risk monitoring, Merrick's willingness to take on high-risk merchants, and undisclosed litigation.  (Compl. ¶¶ 19-

20.)  Next, they identify the speakers who made the allegedly fraudulent statements ("Brian

Smith, Bryan Hayden, and others"), but they fail to allege any facts showing the connection that

these individuals had to Merrick.  (Id. ¶ 19.)  Third, they identify the approximate time at which

the representations were allegedly made ("in the weeks prior to entering into the Contract"), (id.

¶ 54),[6] but do not allege facts to show where the statements were made.  Most crucially,

however, paragraphs eighteen through twenty-nine fail to allege facts to show why the alleged

misrepresentations and nondisclosures could be attributed to Merrick, and they fail to allege facts

to show that the alleged misrepresentations and nondisclosures were fraudulent.  See Lerner, 459

F.3d at 290.  The allegations of fraud, as presented in the Complaint, lack the particularity

required to create a "strong inference" that Merrick is liable for the alleged conduct.  Id. at 290-

91.  Therefore, paragraphs eighteen through twenty-nine fail to meet the heightened pleading

standard of Rule 9(b).

Furthermore, Frontline's claims for fraud fail as a matter of New York law because

Frontline will be unable to establish that his reliance on alleged misrepresentations made by

Brian Smith, Bryan Hayden, and others was reasonable.  When plaintiffs are sophisticated parties

and the statement or omission relates to a business transaction that has been formalized in a

contract, New York courts are generally reluctant to find reliance on oral communications to be

---

[6] Frontline argues that the specification of what time the allegedly fraudulent statements were made, alleged later in
the Complaint, should be read into its earlier fraud claims.  (Pl.'s Opp'n at 10 n.1.)  Under Federal Rule of Civil
Procedure 10(c), "a statement in a pleading may be adopted by reference elsewhere in the same pleading."
Paragraph fifty-four states, "in the weeks prior to entering the Contract, Merrick made the following suggestions as
fact to Frontline which Merrick knew were not true at the time the suggestions were made." (Compl. ¶ 54.)  That
paragraph goes on to describe the same misrepresentations alleged in the fraud/fraudulent inducement claim, the
constructive fraud claim, and the negligent misrepresentation claim.  ((Id. ¶¶ 19-20, 31-32, 42-43,54-55)( alleging
misrepresentations regarding chargeback insurance programs, risk monitoring, Merrick's willingness to take on
high-risk merchants, and undisclosed litigation).)  Given the substantial factual similarity of these claims, it is
appropriate to adopt the statement "in the weeks prior to entering the Contract" by reference into the remaining
claims based upon representation.  (Id. ¶¶ 18-59.)

reasonable.[7]  See Junk, 2007 WL 4292034, at *7.  This reluctance stems from the view that "a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament."  Id. (quoting Emergent Capital Inv. Mgmt. LLC v. Stonepath Group, Inc., 343 F.3d 189, 195 (2d Cir. 2003)).  Further, though it is not an outright bar to such a claim, the existence of a merger clause does increase a court's reluctance to determine that a plaintiff reasonably relied on a prior representation.  See id.  The merger clause in the Agreement provides that "this Agreement, including its Schedules, constitutes the entire understanding between the parties with respect to the subject matter hereof and supersedes all prior written and oral proposals, understandings, letters of intent, agreements and *representations*, all of which are merged herein."  (Agreement § 13.4 (emphasis added).)

Here, Frontline is a corporation represented by counsel, and is therefore considered a sophisticated party in the eyes of this Court.  As a sophisticated party, Frontline entered into a formal agreement with Merrick.  What is more, the existence of a merger clause, in section 13.4 of the Agreement, communicates an intention among the parties that the Agreement was to be controlling, and Frontline is deemed to have signed the document with this intent.  See Junk, 2007 WL 4292034, at *7.  As such, Frontline's claim must be dismissed.

Because paragraphs eighteen through twenty-nine fail both under the heightened pleading standard of Rule 9(b) and as a matter of law under New York law, the motion to dismiss the fraud/fraudulent inducement claim is GRANTED.  Because amendment of this claim would be futile, see Foman v. Davis, 371 U.S. 178, 182 (1962), Frontline's request for leave to amend this claim is DENIED.

---

[7] The Complaint alleges that Merrick's "agents," Brian Smith, Brian Hayden, and others, made certain "representations" in order to induce Frontline to enter the Agreement.  (Compl. ¶¶ 19-20.)  There is no indication that any of these representations were ever reduced to writing.  To the contrary, the Plaintiff stated "Frontline does identify the statements that were fraudulent, identifies the *speakers*."  (Tr. 10/24/13 at 23.)

### 2. *Montana Law Governs the Constructive Fraud Claim, and this Claim Warrants Dismissal*

A substantive difference occurs between New York and Montana state law with respect to the constructive fraud claim.  (Compl. ¶¶ 30-40.)  Under New York state law, "constructive fraud requires establishing these same elements [as actual fraud], except that scienter is replaced by a fiduciary or confidential relationship between the parties."  Martext Holdings Corp. v. Engel & Reiman, P.C., 693 F. Supp. 2d 387, 395-96 (S.D.N.Y. 2010).  By contrast, under Montana law, if certain "special circumstances" can be found to exist, "neither a confidential relationship nor a fiduciary relationship is needed to find constructive fraud."  Drilcon, Inc. v. Roil Energy Corp., 749 P.2d 1058, 1061-62 (Mont. 1988).  "Special circumstances" may be found "where a party, by his words or conduct creates a false impression concerning serious impairments or other important matters and subsequently fails to disclose relevant factors."  Id.

Under New York choice-of-law principles, Montana has the greatest interest in the litigation.  "When the law is one which regulates conduct, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."  Feldman Law Group P.C. v. Liberty Mut. Ins. Co., 819 F. Supp. 2d 247, 256 (S.D.N.Y. 2011) (internal citation omitted).  Here, Frontline's tort claims allege that Merrick made false representations in Montana in order to induce Frontline to enter into the Agreement, and that Frontline sustained injury in Montana where it signed the Agreement and incurred damages.  (Pl.'s Opp'n at 13.)  None of the alleged tortious conduct took place in or caused injury in New York.

However, even under Montana law, the constructive fraud claim warrants dismissal. Under Montana state law, the constructive fraud claims must be pleaded with particularity to

survive the heightened pleading requirements of Rule 9(b).  To support a claim for constructive

fraud, even under Montana law, Frontline must nevertheless explain why the statements were

fraudulent and must also present the time and place that the allegedly fraudulent statements were

made.  The constructive fraud allegations lack the particularity required to create a "strong

inference" that Merrick is liable for the alleged conduct.  See Lerner, 459 F.3d at 290-291.

The motion to dismiss the constructive fraud claim is GRANTED.  Because leave to

amend is "freely given" under Rule 15(a) and because this is Frontline's first pleading,

Frontline's request for leave to amend paragraphs thirty through forty is GRANTED.[8]

### 3. Montana Law Governs the Negligent Misrepresentation Claim, and this Claim Warrants Dismissal

A substantive difference occurs between New York and Montana state law with respect

to negligent misrepresentation.  New York negligent misrepresentation law requires the existence

of a "special" or "privity-like" relationship that "imposes a duty on the defendant to impart

correct information to the plaintiff."  Anschutz Corp. v. Merrill Lynch & Co., 690 F.3d 98, 113

(2d Cir. 2012) (citing J.A.O. Acquisition Corp. v. Stavitsky, 863 N.E.2d 585, 587 (N.Y. 2007)).

By contrast, Montana law requires no such relationship.  Under Montana law, a negligent

misrepresentation claim has the following elements: (1) the defendant made a representation as

---

[8] As in the fraud/fraudulent inducement claim, one element of constructive fraud is that the plaintiff must have been justified in relying on the alleged false representation.  See Town of Geraldine v. Montana Mun. Ins. Authority, 198 P.3d 796, 801 (Mont. 2008).  Unlike New York courts, however, no Montana courts have held that when plaintiffs are sophisticated parties and the statement or omission relates to a business transaction that has been formalized in a contract, reliance on oral communications may be found to be unreasonable as a matter of law at the motion to dismiss stage.  Compare Junk, 2007 WL 4292034, at *7, with Northwestern Corp. v. Economic Research Group, Inc., No. 08 Civ. 04, 2008 WL 253206, * 4-8 (D. Mont. June 24, 2008) (denying motion to dismiss a constructive fraud claim based on oral statements made by plaintiffs despite, inter alia, existence of merger clause in contract).  Rather, Montana courts that have considered the issue of justifiable reliance on alleged misrepresentations have done so at the summary judgment stage.  Avco Financial Services v. Foreman-Donovan, 772 P.2d 862, 864 (Mont. 1989) (noting that "fraud is generally a question of fact").  Therefore, dismissing these claims as a matter of law is, at this stage, premature.  However, the amended Complaint should allege specific facts showing that Frontline relied on the allegedly fraudulent misrepresentations made by Merrick or its officers or authorized agents.

to a past or existing material fact; (2) the representation must have been untrue; (3) regardless of

its actual belief, the defendant must have made the representation without any reasonable ground

for believing it to be true; (4) the representation must have been made with the intent to induce

the plaintiff to rely on it; (5) the plaintiff must have been unaware of the falsity of the

representation; it must have acted in reliance upon the truth of the representation and it must

have been justified in relying on the representation; (6) the plaintiff, as a result of his or her

reliance, sustained damage.  Deichl v. Savage, 216 P.3d 749, 753 (Mont. 2009).  Because of the

difference between New York and Montana law, the Court must next examine each jurisdiction's

interest in the application of its own law.

      For the same reasons discussed above with respect to the constructive fraud claim, the

Montana contacts and interests outweigh New York's interest in this case, and therefore Montana

negligent misrepresentation law applies.  However, even applying Montana law, the negligent

misrepresentation claim is deficiently pled.  The negligent misrepresentation claim references the

same set of facts and incorporates by reference the allegations from its fraud causes of action,

(Compl. ¶¶ 41-52), and, under Rule 9(b), suffers from the same deficiencies as those discussed

above with respect to its fraud and constructive fraud claims.

      Therefore, the motion to dismiss the negligent misrepresentation claim is GRANTED.

Because leave to amend is "freely given" under Rule 15(a) and because this is Frontline's first

pleading, Frontline's request for leave to amend paragraphs forty-one through fifty-two is

GRANTED.[9]

---

[9] Like the constructive fraud claim, the Montana law negligent misrepresentation claim requires reliance upon misrepresentations to be justifiable.  Deichl, 216 P.3d at 753.  This element is currently deficiently pled under Rule 9(b).  (Compl. ¶¶ 41-52.)  However, for the reasons articulated above, supra note 8, it is premature to dismiss the negligent misrepresentation claim as a matter of law at the motion to dismiss stage.  However, the amended Complaint should allege specific facts showing that Frontline relied on the allegedly fraudulent misrepresentations made by Merrick or its officers or authorized agents.

### *4. Montana Law Governs the Deceit Claim, and this Claim Warrants*
### *Dismissal*

The seventh claim of the Complaint alleges deceit as defined in Mont. Code Ann. § 27-1-712.  (Compl. ¶¶ 53-59.)  That statute provides that deceit is either: (1) the suggestion as a fact of that which is not true by one who does not believe it to be true; (2) the assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true; (3) the suppression of a fact by one who is bound to disclose it or who gives information of other facts that are likely to mislead for want of communication of that fact; or (4) a promise made without any intention of performing it.  Mont. Code Ann. § 27-1-712.  Merrick argues that "the deceit claim is in actuality a statutory fraud claim, is duplicative, and fails for the same reasons as Frontline's common law fraud claims."  (Def.'s Mot. at 12 n.6.)  Frontline did not respond to Merrick's arguments in support of its motion to dismiss the deceit claims, and therefore this Court deems the deceit claim abandoned.  See Arma, 591 F. Supp. 2d at 643 (citing Jessamy v. City of New Rochelle, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.")).

Therefore, the motion to dismiss the deceit claim is GRANTED.  Frontline's request for leave to amend this claim is DENIED.

## VI.   CONCLUSION

For the reasons discussed herein, Merrick's motion to dismiss the breach of contract claim alleged in paragraph 7(f) is DENIED.  Merrick's motion to dismiss the breach of contract claims alleged in paragraphs 7(a)-(e), (g)-(l), and paragraph eight is GRANTED.  Frontline's

request for leave to amend the breach of contract claims alleged in paragraphs 7(a)-(e), (g)-(l), and paragraph eight is GRANTED.

Merrick's motion to dismiss the breach of the implied covenant of good faith and fair dealing claim, the conversion claim, the fraud/fraudulent inducement claim, the constructive fraud claim, the negligent misrepresentation claim, and the deceit claim is GRANTED.  Leave to amend the Montana law constructive fraud claim and the Montana law negligent misrepresentation claim is GRANTED.  Leave to amend the breach of the implied covenant of good faith and fair dealing claim, the conversion claim, the fraud/fraudulent inducement claim, and the deceit claim is DENIED.  Any amended complaint must be filed within thirty days of this decision.  The parties should consider prompt settlement of this action.

SO ORDERED.

Dated:  New York, New York
        March 3, 2014

_____/s/_____

Robert P. Patterson, Jr.
United States District Judge


**Counsel for Plaintiff:**

**Bradford James Brown**
Crowley, Fleck, LLP
45 Discovery Drive
PO Box 10969
Bozeman, MT 59719-0969
406-556-1430
Email: bbrown@crowleyfleck.com

**Chester R. Ostrowski**
Seiger Gfeller Laurie LLP
330 Madison Avenue
New York, NY 10017
(212)-653-8881
Email: costrowski@sgllawgroup.com

**Jeffery J. Oven**
Crowley, Fleck, LLP
490 N. 31st St., Suite 500
Billings, MT 59101
(406) 255-7313
Email: joven@crowleyfleck.com

<u>**Counsel for Defendant:**</u>

**Daniel George Gurfein**
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, NY 10169
212-404-8702
Email: dgurfein@ssbb.com

**James J. Regan**
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, NY 10169
(212)-404-8735
Email: jregan@ssbb.com

**Philip B. Condra**
Milodragovich Dale Steinbrenner & Nygren
620 High Park Way
PO Box 4947
Missoula, MT 59806-4947
406-728-1455
Email: bcondra@bigskylawyers.com